EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| IRR Gas Station Corporation & Rancho Dan Service Station, Inc.<br><br>Peticionarios<br><br><br>Oficina de Gerencia de Permisos<br><br>Recurrida<br><br>v.<br><br>T & B. Petroleum Corp.<br><br>Recurrido | Certiorari<br><br>2020 TSPR 14<br><br>203 DPR ____ |

Número del Caso:  CC-2018-303


Fecha: 12 de febrero de 2020


Tribunal de Apelaciones:

    Región Judicial de San Juan – Caguas, Panel I


Abogada de la parte Peticionaria:

    Lcda. Carmen M. Quiñones Núñez



Abogado de la parte Recurrida:

    Lcdo. Daniel R. Martínez Avilés



Materia:  Sentencia con Opinión de Conformidad.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| IRR Gas Station Corporation & Rancho Dan Service Station, Inc.<br><br>　　　　Peticionarios<br><br>Oficina de Gerencia de Permisos<br><br>　　　　Recurrida<br><br>　　　　　v.<br><br>T & B Petroleum Corp.<br><br>　　　　Recurrido | **Núm.** <u>CC-2018-0303</u> |

SENTENCIA

En San Juan, Puerto Rico, a 12 de febrero de 2020.

Expedido el recurso de *certiorari*, y con el beneficio de la comparecencia de ambas partes, se revoca el dictamen del Tribunal de Apelaciones y se reinstala en su totalidad la determinación de la División de Reconsideración de la OGPe, por ésta haber actuado con jurisdicción al dejar sin efecto el permiso de construcción concedido a la parte recurrida, T & B Petroleum Corp.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emite una Opinión de conformidad a la que se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez. La Jueza Asociada señora Pabón Charneco disiente sin opinión escrita. El Juez Asociado señor Kolthoff Caraballo no intervino. Los Jueces Asociados señor Martínez Torres y señor Feliberti Cintrón inhibidos.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| IRR Gas Station Corporation & Rancho Dan Service Station, Inc. | |
|---|---|
| Peticionarios | |
| Oficina de Gerencia de Permisos | **Núm.** CC-2018-0303 |
| Recurrida | |
| v. | |
| T & B Petroleum Corp. | |
| Recurrido | |

Opinión de conformidad de la Juez Asociada señora Rodríguez Rodríguez a la que se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico, a 12 de febrero de 2020.

En esencia, el caso de epígrafe requería determinar si la División de Reconsideración de Determinaciones Finales de la Oficina de Gerencia de Permisos (OGPe) tenía jurisdicción para atender una solicitud de reconsideración presentada luego de que transcurriera el término de veinte (20) días dispuesto en ley para acudir en reconsideración de un permiso de construcción. Para atender esta controversia resultaba preciso resolver: (1) si los peticionarios cumplieron con los requisitos estatutarios para ser considerados como "partes" en el procedimiento administrativo ante la OGPe; (2) si la agencia tenía que resolver la solicitud de intervención presentada antes de conceder el permiso de construcción y (3) si se deben aplicar las doctrinas desarrolladas jurisprudencialmente sobre "notificación adecuada" y "notificación constructiva". Mediante la

sentencia que antecede correctamente se concluye que la División de reconsideración de la OGPe actuó con jurisdicción en el presente caso. Por estar conforme con esa determinación, he decidido expresarme en torno a su corrección y los fundamentos que la sostienen.

**I.**

IRR Gas Station Corporation (IRR Gas) es una corporación con fines de lucro dueña de una estación de gasolina sita en la Avenida Dr. Francisco Susoni del barrio Pueblo en el Municipio de Hatillo; la cual, en la actualidad, está siendo arrendada por Rancho Dan Service Station (Rancho Dan y, en conjunto, peticionarios). Surge del expediente, que, a mediados del año 2016, IRR Gas presentó una querella ante la OGPe en la que alegó que una estación de gasolina -localizada dentro del radio reglamentario a la suya- aparentaba estar en proceso de remodelación sin contar con los permisos necesarios para ello. Así pues, luego de una investigación administrativa, el 16 de noviembre de 2016, la OGPe emitió una *Notificación de Hallazgos y Orden de Mostrar Causa* en la que ordenó a la corporación T & B Petroleum (T & B o recurrido), dueña de la estación de gasolina, pagar una multa de quinientos dólares ($500.00) por la ausencia de un permiso de construcción.

Luego de esta determinación, el 16 de diciembre de 2016, IRR Gas presentó una *Solicitud de Intervención* ante la OGPe para formar parte del proceso de otorgación del permiso de construcción (2016-138333-PCO-008890) solicitado por T & B. Este permiso consistía en la remodelación y expansión de una

estación de gasolina y un "mini market" con venta de bebidas alcohólicas selladas y cigarrillos, bajo el nombre "Mar Azul Service Station" (Mar Azul). En su solicitud de intervención, IRR Gas arguyó que T & B pretendía remodelar una estación de gasolina que estuvo cerrada por más de cuatro (4) años y que, conforme al *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo y Uso de Terrenos*, Reglamento Núm. 8573 de 24 de marzo de 2015, (Reglamento Conjunto), cuando una estación ha estado cerrada por más de dos (2) años, cualquier permiso de uso o construcción debe tramitarse como una estación nueva. Además, IRR Gas señaló que también había solicitado la reconsideración del permiso de uso de dueño (2016-138333-PUS-025614) expedido a favor de T & B sobre la estación Mar Azul por entender que éste fue concedido de forma ilegal.[1] Por estas razones, IRR Gas solicitó intervenir en el procedimiento ya que tenía un interés legítimo en la otorgación del permiso de construcción.

Sin embargo, el 19 de diciembre de 2016, es decir, tres (3) días luego de la presentación de la *Solicitud de Intervención*, la OGPe expidió el permiso de construcción solicitado por T & B, sin antes resolver la solicitud de intervención. Surge del expediente que, el 5 de enero de 2017, el Sr. Iván Román, presidente de IRR Gas, solicitó y obtuvo copia ante la OGPe del expediente del presente caso.

---

[1] A pesar de que la evaluación de este permiso de uso no está ante la consideración de este Foro, conviene señalar que, según el expediente, el 2 de noviembre de 2016 la OGPe expidió un permiso de uso para la estación Mar Azul.

IRR Gas sostiene que fue en ese momento que advino en conocimiento de que el permiso de construcción había sido expedido a favor de T & B. Como resultado de esto último, el 18 de enero de 2017, IRR Gas presentó una solicitud de reconsideración y de celebración de vista ante la División de Reconsideración de Determinaciones Finales de la Oficina de Gerencia de Permisos (División de reconsideración). Sostuvo que nunca fue notificada de asunto alguno en relación con el permiso de construcción y que éste era nulo por haberse otorgado en contravención al Reglamento Conjunto. Del tracto procesal se desprende que la División de reconsideración acogió la solicitud el 2 de febrero de 2017 y citó una vista para el 22 de febrero de 2017.[2]

En la vista, T & B realizó varios planteamientos jurisdiccionales y por razón de ello la División de reconsideración procedió a suspenderla y recalendarizarla para el 3 de marzo de 2019. Asimismo, ordenó a las partes comparecer por escrito para que expresaran sus respectivas posturas en torno a este asunto. Así, el 2 de marzo de 2017, T & B presentó una *Solicitud urgente de desestimación por falta de jurisdicción sobre la materia* mediante la cual argumentó que la determinación de la OGPe otorgando el permiso de construcción había advenido final y firme, ya que la reconsideración se presentó fuera del término de veinte

---

[2] Mediante una orden fechada el 7 de febrero de 2017, la División de Reconsideración consolidó para fines administrativos y de economía procesal la solicitud de reconsideración presentada por IRR Gas sobre el permiso de construcción y el permiso de uso.

(20) días, establecidos en la Regla 5B del *Reglamento de Procedimientos Adjudicativos de la División de Reconsideración de Determinaciones Finales*, Reglamento Núm. 8457 de 24 de marzo de 2015, (Reglamento de procedimientos adjudicativos).

En la vista del 3 de marzo, T & B reiteró que la moción de reconsideración debía ser desestimada por falta de jurisdicción. En oposición, la representación legal de IRR Gas alegó que la reconsideración estaba a tiempo porque nunca se le notificó la expedición del permiso de construcción y, de otra parte, sostuvo que la OGPe no había resuelto la solicitud de intervención que presentó previo a la concesión del permiso. En apoyo de esto último, presentó prueba documental y testifical en torno al asunto jurisdiccional. Una vez concluida la vista, se concedieron términos adicionales a las partes para presentar escritos suplementarios.[3]

Posterior a esto, se celebró otra vista el 11 de abril de 2017, en la que las partes acordaron un término de noventa (90) días para resolver el caso y que, previo a la adjudicación en los méritos, se atendieran los planteamientos jurisdiccionales y se resolviera la solicitud de intervención

---

[3] En esta vista administrativa se atendió la moción de reconsideración del permiso de uso presentada por IRR Gas y una moción de desistimiento sin perjuicio presentada el 27 de febrero de 2017 por T & B. Luego de considerar los argumentos de ambas partes, el 10 de marzo de 2017, la División de reconsideración emitió una *Resolución de Reconsideración* en la que dispuso que procedía la solicitud de desistimiento y dejar sin efecto el permiso de uso emitido. *Petición de certiorari*, Ap. en la pág. 204-08.

de IRR Gas. En el ínterin, y paralelo al proceso ante la División de reconsideración, el 18 de abril de 2017, la OGPe emitió una resolución en la que declaró *ha lugar* la solicitud de intervención. Así las cosas, el 21 de abril de 2017, la División de reconsideración emitió una *Resolución interlocutoria* en la que declaró académica la solicitud para resolver la intervención, proveyó *no ha lugar* a la solicitud de desestimación presentada por T & B y ordenó la continuación de los procedimientos. Ese mismo día, T & B presentó una moción en auxilio de jurisdicción y un recurso de revisión judicial ante el Tribunal de Apelaciones. No obstante, en igual fecha, el foro apelativo intermedio dictó sentencia declarando *no ha lugar* la solicitud de auxilio y desestimó el recurso de revisión por prematuro.

Devuelta al foro administrativo, los días 8 y 10 de mayo de 2017 se celebraron vistas relacionadas con la solicitud de reconsideración presentada por IRR Gas ante la División de reconsideración. Durante estas vistas, ambas partes presentaron prueba documental y testifical, incluyendo prueba pericial. Así las cosas, el 18 de mayo de 2017, la División de reconsideración, amparada en la evidencia sustancial del récord administrativo, emitió una resolución mediante la cual dejó sin efecto el permiso de construcción expedido a favor de T & B. Véase *Resolución de reconsideración*, Ap. en la pág. 47.

Inconforme con esta determinación, el 19 de junio de 2017, T & B presentó un recurso de revisión judicial ante el Tribunal de Apelaciones en el cual planteó que la División

de reconsideración no tenía jurisdicción para atender la solicitud de reconsideración presentada por IRR Gas y que dicha compañía no estaba autorizada para presentarla, puesto que no incluyó una resolución corporativa para tales efectos. IRR Gas y Rancho Dan oportunamente se opusieron. Así las cosas, el 9 de noviembre de 2017, el foro apelativo intermedio emitió una sentencia por medio de la cual revocó al foro administrativo y resolvió que como IRR Gas y Rancho Dan no eran "partes" de los procedimientos, no había una obligación de notificarles la concesión del permiso de construcción. En atención a ello, determinó que el término de veinte (20) días para presentar una reconsideración vencía el 9 de enero de 2017. Así, sostuvo que IRR Gas conocía de la determinación administrativa desde el 5 de enero de 2017 y aún estaban tiempo para presentar su reconsideración, "pero optaron por no hacerlo". *Sentencia del Tribunal de Apelaciones*, en la pág. 9. Concluyó, entonces, que la presentación de la solicitud de reconsideración el 18 de enero de 2017 resultó tardía y privó de jurisdicción a la División de reconsideración para atenderla. *Id.*

Inconformes, IRR Gas y Rancho Dan presentaron una moción de reconsideración, la cual fue denegada el 16 de febrero de 2018. Así las cosas, el 16 de marzo de 2018, éstos presentaron una petición de *certiorari* ante este Tribunal en la que arguyeron como único señalamiento de error que la División de reconsideración tenía jurisdicción para atender el recurso presentado y que avalar lo contrario penalizaría

a quienes deseaban hacer valer sus derechos.[4] Expedimos el recurso. Posteriormente ambas partes presentaron sus respectivos alegatos.

Los peticionarios arguyen en su alegato que la División de reconsideración tenía jurisdicción para entender la solicitud de reconsideración porque dicha agencia aplicó el concepto de "notificación constructiva" y determinó que el término comenzaba a transcurrir a partir del momento en que se les entregó copia del expediente administrativo, el 5 de enero de 2017. Sostienen que la División de reconsideración corrigió el "error administrativo que comet[ió] la agencia de no considerar la solicitud de intervención y luego aprobar el permiso de construcción". *Alegato de los opositores-recurrentes*, en la pág. 15. Cónsono con este argumento, los peticionarios alegan que la OGPe venía obligada por la ley y las disposiciones reglamentarias aplicables a considerar su intervención en el pleito. Por todo lo cual, solicitan a este Foro que revoque la determinación del foro apelativo intermedio.

De otro lado, T & B argumenta que los peticionarios no estaban autorizados a presentar una solicitud de intervención en el procedimiento en torno al permiso de construcción

---

[4] Específicamente el señalamiento de error lee de la siguiente forma:

> Erró el Tribunal de Apelaciones al determinar que la División de Reconsideraciones de las Determinaciones Finales de la OGPe carecía de jurisdicción para considerar la solicitud de Reconsideración que sometieron los aquí [peticionarios], penalizando así a los ciudadanos que quieres hacer valer sus derechos.

concedido porque éstos no ostentaban una resolución corporativa para esos fines. Expone además que, conforme a la jurisprudencia de este Tribunal, IRR Gas y Rancho Dan no eran parte en el pleito cuando se otorgó el permiso en cuestión y, por ende, la OGPe no tenía obligación en ley alguna para notificarles la concesión de éste. Así pues, T & B arguye que el término para acudir ante la División de Reconsideración vencía el 9 de enero de 2017 y que, a pesar de que los peticionarios advinieron en conocimiento del permiso de construcción el 5 de enero de 2017, no presentaron la solicitud de reconsideración hasta el 18 de enero de 2017. Concluye que la División de Reconsideración no tenía jurisdicción para atender el recurso presentado y que, según la normativa de deferencia a las decisiones administrativas, no se rebatió la presunción de corrección de la determinación de la OGPe. Por todo lo cual, solicita que este Tribunal confirme la determinación del Tribunal de Apelaciones.

Con el beneficio de la comparecencia de ambas partes, este Tribunal correctamente revoca al Tribunal de Apelaciones y determina que la División de reconsideración de la OGPe tenía jurisdicción para dejar sin efecto el permiso de construcción concedido a T & B. Por los fundamentos que expongo a continuación, estoy conforme con este proceder.

**II.**

Como cuestión de umbral, conviene destacar que el único señalamiento de error presentado ante este Foro se limita a cuestionar si la División de reconsideración tenía

jurisdicción para atender la solicitud de reconsideración presentada por IRR Gas y Rancho Dan.

Para analizar esta controversia procede, en primer lugar, examinar qué constituye una "parte" y un "interventor" en el contexto particular del procedimiento de la concesión de un permiso y conforme nuestra jurisprudencia interpretativa en dicha materia. De otro lado, resulta preciso discutir el alcance de las doctrinas sobre la "notificación adecuada" y la "notificación constructiva" y el derecho a solicitar reconsideración de una determinación administrativa.

**A.**

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161 de 1 de diciembre de 2009, según enmendada, 23 LPRA sec. 9011 *et seq.* (Ley Núm. 161-2009) dispone en su Artículo 18.6 que la *Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico* (LPAU), Ley Núm. 170 de 12 de agosto de 1988, 3 LPRA sec. 2101 *et seq.*[5] aplicará "a todos los procedimientos para la evaluación, el otorgamiento o la denegación de determinaciones finales y permisos, recomendaciones, certificaciones, licencias, certificados, [entre otros] . . . salvo en las instancias que expresamente se disponga lo

---

[5] La LPAU fue enmendada recientemente por la Ley Núm. 28 del 30 de junio de 2017, 3 LPRA secs. 9601 *et seq.*, y ahora se le conoce como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico". Sin embargo, al momento de los hechos del presente caso aún estaba vigente la anterior LPAU y, por ende, es esa legislación la que aplica a la controversia ante este Foro.

contrario o en aquellos casos donde este capítulo resulte inconsistente con la [LPAU]". 23 LPRA sec. 9028(e). Esta directriz legislativa, entonces, nos remite a examinar primero la LPAU y considerar, supletoriamente, la Ley Núm. 161-2009.

El alcance del concepto "parte" en el Derecho Administrativo está contemplado en la Sección 1.3(k), Capítulo I (Disposiciones Generales) de la LPAU, la cual dispone que una "parte":

> Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento.

3 LPRA sec. 2102(k).

Al interpretar dicha disposición, este Tribunal ha resuelto que una persona natural o jurídica que se encuentre participando de forma activa en un proceso administrativo y que interese ser considerada como "parte" -con todo lo que ello conlleva para propósitos de la revisión de una determinación administrativa- tiene la obligación de presentar una solicitud formal, por escrito y debidamente fundamentada; es decir, demostrar cómo se verá afectado su interés legítimo. Véase *JP Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177 (2009). Véase además, Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme* (Forum, 2013), en las págs. 176-77.

Esta solicitud puede llevarse a cabo mediante la figura del "interventor". La Sección 1.3(f) de la LPAU define un "interventor" como "aquella persona que no sea parte original en cualquier procedimiento adjudicativo que la agencia lleve a cabo y que haya demostrado su capacidad o interés en el procedimiento". 3 LPRA sec. 2102(f). De otro lado, en el Capítulo III (Procedimiento Adjudicativo) se detalla el proceso para intervenir en un procedimiento administrativo. En específico, la Sección 3.5 dispone que, "[c]ualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir". 3 LPRA sec. 2155. Renglón seguido, la ley menciona una serie de factores que la agencia puede tomar en consideración para conceder o denegar la solicitud. *Id.* Véase además, *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998 (2008). Al momento de evaluar estos criterios, la agencia por mandato de ley deberá interpretarlos de manera liberal y puede requerir que se someta evidencia adicional. 3 LPRA sec. 2155.

Aunque toda solicitud de intervención ante la OGPe se regirá por lo dispuesto en LPAU, la Ley Núm. 161-2009 especifica que, además, se debe recurrir a los reglamentos aplicables a la agencia. En concreto, la ley establece que:

> Cualquier persona interesada en ser parte del proceso de evaluación de determinaciones finales, permisos, así como cualquier procedimiento adjudicativo requerido bajo las disposiciones de este capítulo deberá presentar una solicitud de intervención. El contenido, evaluación, adjudicación y revisión de determinaciones finales

sobre solicitudes de intervención se regirá por lo dispuesto en la Ley de Procedimiento Administrativo Uniforme. Los detalles sobre el proceso de intervención deberán reflejarse en el Reglamento Conjunto.

23 LPRA sec. 9035(a).

En lo pertinente, la Sección 6.1.2 Capítulo VI (Procedimiento Adjudicativos: En general) del Reglamento Conjunto, vigente al momento de los hechos que originan este caso, recoge lo mismo que establece la LPAU y la Ley Núm. 161-2009.[6] Esta sección dispone que:

Cualquier persona que tenga un interés legítimo en **un procedimiento adjudicativo** presentado ante la OGPe podrá presentar una solicitud de intervención debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. La OGPe concederá o denegará la solicitud tomando en consideración lo dispuesto en la Ley de Procedimiento Administrativo Uniforme.

*Reglamento conjunto*, supra, en la pág. 192 (citas omitidas) (énfasis suplido).

---

[6] Tras una impugnación judicial, el 21 de diciembre de 2016, el Tribunal de Apelaciones declaró nulo el Reglamento Conjunto Núm. 8573. Véase *Morales Vargas v. Junta de Planificación*, 2016 WL 8454922. La Junta de Planificación no recurrió de esta determinación y, en respuesta a ella, el 1 de marzo de 2017, restituyó el anterior reglamento conjunto, Reglamento Núm. 7951 del 30 de noviembre de 2010, en todo aquello que no fuera incompatible con la Ley Núm. 161-2009, según enmendada. Véase Resolución JPI-31-10-2017. Posterior a esa resolución, el 8 de mayo de 2019, se estableció el reglamento conjunto de permisos vigente en la actualidad. Véase Reglamento Núm. 9081 del 8 de mayo de 2019. Ahora bien, surge de la *Resolución* que emitió la División de reconsideración en el presente caso todo su análisis está basado en el Reglamento Conjunto que posteriormente fue declararon nulo. Esto, dado que ese era el reglamento vigente el 19 de diciembre de 2016 al momento de la concesión inicial del permiso de construcción. Véase *Resolución de reconsideración*, Ap. en las págs. 46-47. Por ende, nos corresponde atender las controversias ante nuestra consideración bajo ese estado de Derecho.

Además de este Reglamento Conjunto, debemos señalar que la Regla 6 del *Reglamento de procedimientos adjudicativos* permite que "una persona que tenga un interés legítimo en el procedimiento ante la División de Reconsideración" presente una solicitud de intervención debidamente fundamentada. *Reglamento de procedimientos adjudicativos*, supra, en la pág. 12. Al igual que la LPAU, la "División de Reconsideración podrá conceder o denegar la solicitud, a su discreción" tomando en consideración ciertos factores allí enumerados. *Id.*

Ahora bien, más allá de estas definiciones estatutarias y reglamentarias, en *Claro TV y Junta Regl. Tel. v. One Link*, 179 DPR 177 (2010), este Tribunal se expresó en torno a la aplicación de la figura del interventor en el procedimiento para la concesión de licencias, franquicias, permisos y acciones similares contempladas en el Capítulo V de la LPAU. Sobre este asunto se resolvió que el proceso inicial de la concesión de permisos **no es adjudicativo** y, por tanto, en esa etapa de los procedimientos **no aplica** el derecho de intervención. *Id.* en la pág. 211.

En *Claro TV y Junta Regl. Tel.* se señaló que la inaplicabilidad del derecho a intervenir en esta etapa inicial no alteraba las decisiones emitidas anteriormente en esta materia. A esos efectos, se indicó que una persona afectada por la determinación de una agencia, ya fuese un solicitante a quien se les denegó dicha autorización o terceros-opositores que interesaran impugnar su concesión, tenían a su disposición el derecho de intervenir en el

proceso de **impugnación** de una decisión administrativa, *San Antonio Maritime v. Puerto Rico Cement Co.*, 153 DPR 374 (2001). Este derecho a intervenir surge una vez el procedimiento se torna adjudicativo **luego** de que la agencia otorgue o deniegue un permiso, *Ranger American v. Loomis Fargo*, 171 DPR 670 (2007). Véase además, Sección 5.4 de la LPAU, 3 LPRA sec. 2184.

Con esta discusión en mente, conviene evaluar el alcance del ordenamiento jurídico puertorriqueño en materia del requisito constitucional de la "notificación" y los requisitos estatutarios para solicitar reconsideración de una determinación final en el Derecho Administrativo.

**B.**

En el ámbito del Derecho Administrativo, el debido proceso de ley requiere que las agencias emitan una "notificación adecuada" de sus determinaciones finales a todas las partes involucradas tras concluir un procedimiento adjudicativo. Véase *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 245-46 (2007). Esta "notificación adecuada" busca salvaguardar el derecho que tiene una parte en este procedimiento para solicitar una reconsideración y/o revisión judicial, según sea el caso. Véase *Molini Gronau v. Corp. P.R. Dif. Púb.*, 179 DPR 674 (2010).

En el contexto específico de la concesión de permisos por parte de la OGPe, todas las reglas que rigen los procedimientos relacionados con los trámites de una reconsideración surgen del *Reglamento de procedimientos adjudicativos*. La Regla 5B de este Reglamento dispone que el

término para que una parte adversamente afectada por una determinación final de la OGPe pueda solicitar reconsideración es de veinte (20) días desde la fecha de archivo en autos de la copia de la notificación de la resolución o determinación final. *Reglamento de procedimientos adjudicativos*, supra, en la pág. 5.[7]

Como se desprende de este reglamento, para que el término de veinte (20) días aplique deben concurrir ciertos elementos: (1) ser una "parte" adversamente afectada (2) por una determinación final, (3) de la cual recibió una notificación. La concurrencia de estos elementos levanta ciertas interrogantes que inciden en la resolución de la presente controversia. En primer lugar, ¿quién tiene derecho a la notificación? Según la LPAU, tendrán derecho a la notificación de órdenes y/o resoluciones finales "sus abogados, de tenerlos, la orden o resolución a la brevedad posible [y que] [u]na parte no podrá ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma". 3 LPRA sec. 2164. Asimismo, la Ley Núm. 161-2009 -específicamente- dispone que "[l]a Oficina de Gerencia de Permisos . . . notificará[] copia de toda determinación final, en cumplimiento con los reglamentos aplicables". 23 LPRA sec. 9018. En atención a esto, la Regla 7.15 del Reglamento Conjunto dispone que "[l]a determinación

_____

[7] Este término -por disposición reglamentaria expresa- no es de índole jurisdiccional, ya que la Regla 5A establece que, "la solicitud de reconsideración no es jurisdiccional [y] [s]u oportuna presentación interrumpe el término para acudir en revisión judicial". *Id.*

final que tome OGPe con relación al caso será notificada a las partes en el término establecido [y] [l]as determinaciones finales expedidas por la OGPe entrarán en vigor a partir de la fecha en que se certifique que se expidió su notificación, salvo disposición expresa en contrario". *Reglamento Conjunto*, supra, en las págs. 208-209.

De otro lado, en el contexto de la concesión de permisos, ¿qué se considera una "determinación final"? De entrada, resaltamos que cuando los reglamentos en cuestión aluden al concepto de "determinación final" no se hace distinción alguna entre orden, resolución final o permiso. Es decir, la OGPe, para todos los efectos, emite una "determinación final" cada vez que decide conceder o denegar un permiso. Específicamente, así surge del *Reglamento de procedimientos adjudicativos*, el cual define una "determinación final" como una "Actuación, Resolución, Informe o Documento que contiene un acuerdo o decisión emitida . . . [y] adjudicando de manera definitiva algún asunto ante su consideración o cualquier otra determinación similar o análoga que se establezca en el Reglamento Conjunto". Regla 4B, *Reglamento de procedimientos adjudicativos*, *supra*, en la pág. 1. Asimismo, esta regla dispone que la determinación "se convertirá en un permiso final y firme una vez hayan transcurrido los términos correspondientes para su revisión". *Id.* Véase además, 23 LPRA sec. 9011(21).

En resumen, como norma general, en el proceso de la concesión de permisos emitidos por la OGPe se cumple con el

derecho de una "notificación adecuada", cuando se le notifica a las "partes" de una determinación final (orden, resolución final o permiso) y éstas advendrán finales y firmes una vez haya transcurrido el término de veinte (20) días para acudir en revisión. Como excepción limitada al incumplimiento de esta norma en un procedimiento adjudicativo administrativo, este Tribunal desarrolló la doctrina de la "notificación constructiva" o el "conocimiento constructivo". Véase *Asoc. Residentes v. Montebello Dev. Corp.*, 138 DPR 412 (1995). Esta norma se activa cuando una persona, natural o jurídica, a pesar de no haber recibido la notificación, pudo o debió conocer la existencia de un hecho o evento en virtud de determinadas circunstancias que permiten hacer una inferencia de manera razonable.

En *Montebello Dev. Corp*, ARPE había notificado mediante resolución, la aprobación de un plano de desarrollo preliminar para un proyecto de urbanización residencial. En la resolución, la agencia consignó que cualquier parte adversamente afectada podría presentar una moción de reconsideración dentro del término de veinte (20) días. No obstante, treinta y ocho (38) días después de la notificación de dicha determinación, la Asociación de Residentes de la urbanización afectada solicitó intervenir en el proceso ante la ARPE, y en la alternativa, que se reconsiderara la aprobación del plano, ya que no se les había notificado de la misma. Luego de varios trámites procesales, aunque la ARPE no estableció si en efecto la resolución había sido notificada formalmente a la Asociación de Residentes,

la agencia concluyó que dicha asociación tuvo conocimiento específico de ella con tiempo suficiente para solicitar reconsideración, por lo que la notificación formal no era necesaria. El Tribunal Superior confirmó la determinación de la agencia.

Este Tribunal -al evaluar la controversia relacionada con la necesidad de que hubiese una notificación formal- resolvió que el término de veinte (20) días para solicitar reconsideración aplicaba **sólo** a aquellos que eran partes formalmente del procedimiento administrativo. Dado que la Asociación de Residentes nunca lo fue, el término de veinte (20) días no le era oponible y tampoco bastaba la "notificación constructiva" para que comenzara a trascurrir el referido término. Al discutir esta norma, este Tribunal sostuvo que: "[c]omo método alterno, la notificación constructiva, incluso por inferencias, es de excepción; se justifica en circunstancias peculiares ausentes en este caso". *Montebello Dev. Corp*, 138 DPR en la pág. 421. Así pues, se concluyó que no se puede "permitir que un eslabón de tanta envergadura en el debido proceso de ley tome o adopte una configuración laxa basada en una mera conclusión especulativa de que se tenía conocimiento de la decisión administrativa". *Id*. En atención a ello, se determinó que la Asociación de Residente **no tenía** que cumplir con el término de veinte (20) días porque no se le había notificado formalmente la resolución y tampoco era de aplicación la doctrina de la "notificación constructiva". Así, le ordenó a la ARPE que permitiera la intervención de la Asociación de

Residentes y, previa vista evidenciaria, adjudicara en reconsideración sus reclamos.

### III.

En el presente caso, IRR Gas y Rancho Dan presentaron su solicitud de intervención el 16 de diciembre de 2016, previo a que la OGPe emitiera una determinación final en torno al permiso de construcción solicitado por T & B. Conforme a la decisión que este Tribunal emitió en *Claro TV y Junta Regl. Tel.*, la OGPe debió denegar dicha solicitud de intervención porque en la etapa inicial de la concesión de licencias, permisos y franquicias no existe un derecho a intervenir.[8] El Reglamento Conjunto de la OGPe permite, de forma general, el derecho a intervenir, pero claramente dispone que sólo está disponible para los procedimientos adjudicativos ante la OGPe. Véase *Reglamento conjunto*, supra, en la pág. 192. Por ende, al momento en que se concedió el permiso de construcción a favor de T & B, IRR Gas y Rancho Dan no eran, ni podían ser, "partes" del procedimiento administrativo.

No obstante, desde 19 de diciembre de 2016, cuando efectivamente se concedió el permiso en cuestión, la decisión de *Claro TV y Junta Regl. Tel.* **dejó de gobernar** la

---

[8] Aprovechamos esta discusión para señalar que, según surge del expediente, ni los foros recurridos ni las partes en el presente caso –**en ningún momento**– citaron o invocaron en sus dictámenes o alegatos, respectivamente, la decisión de *Claro TV y Junta Regl. Tel. v. One Link*, 179 DPR 177 (2010). En el presente caso, una de las controversias medulares está atendida directamente por lo resuelto en esa Opinión. Resulta altamente preocupante que la decisión de *Claro TV y Junta Regl. Tel.* no haya sido discutida en los escritos presentados ante los foros recurridos.

controversia entre las partes. A partir de ese momento, aplicaba lo resuelto en *Ranger American v. Loomis Fargo*, 171 DPR 670 (2007) y *San Antonio Maritime v. Puerto Rico Cement Co.*, 153 DPR 374 (2001). Estas decisiones establecen que, luego de la concesión de un permiso, cualquier persona, aunque no haya sido "parte" en la etapa inicial, puede impugnar una determinación administrativa.

En este caso, IRR Gas y Rancho Dan no presentaron propiamente un recurso de impugnación para cuestionar la determinación de la OGPe, sino que utilizaron el mecanismo de reconsideración provisto en el *Reglamento de procedimientos adjudicativos*. Al así proceder, descansaron en el hecho de que habían solicitado la intervención en los procedimientos previo a la determinación final, cuya reconsideración ahora solicitaban. Este curso de acción es comparable, para todos los efectos, al proceso de impugnación que constituye un procedimiento adjudicativo y que fue desarrollado jurisprudencialmente en *Ranger American* y *San Antonio Maritime* y avalado posteriormente en *Claro TV y Junta Regl. Tel.*

Por lo tanto, el 2 de febrero de 2017, cuando la División de reconsideración acogió la solicitud de reconsideración presentada por los peticionarios se activó un procedimiento adjudicativo administrativo, equivalente a aquél que hubiese implicado un proceso de impugnación. Ello, porque el permiso de construcción ya se había sido concedido para esa fecha. Dado que esta concesión impartió un carácter adjudicativo a los procedimientos, entonces ya estaba disponible el derecho

a intervenir. Así pues, en el procedimiento adjudicativo de la División de reconsideración, la OGPe permitió la intervención de IRR Gas y Rancho Dan, luego de evaluar y constatar el interés legítimo de las partes. Desde esta fecha, los peticionarios son "partes", con todo lo que eso conlleva, de los procesos administrativos ante la División de reconsideración. Esto sucedió luego de que la propia División de reconsideración hubiese celebrado dos vistas distintas para atender los recursos ante su consideración y en las cuales, según surge del tracto procesal, IRR Gas y Rancho Dan reiteraron que la OGPe aún no había resuelto su solicitud de intervención.

Es decir, procesalmente, la División de reconsideración se aseguró de que los peticionarios se convirtieran en "partes" formales en el procedimiento, vía la figura del interventor, **antes** de disponer en los méritos de la solicitud de reconsideración. En atención al carácter flexible e informal de los procedimientos administrativos y, a tenor con la doctrina de deferencia que éstos merecen, debemos respetar la actuación -razonable, no arbitraria ni caprichosa- llevada a cabo por parte de la OGPe y la División de reconsideración. Véase *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329 (2009); *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006).

Por otro lado, relacionado con el cómputo del término de veinte (20) días para acudir en reconsideración, aplica lo resuelto por este Tribunal en *Montebello Dev. Corp.* Según esta decisión, si previo al 18 de abril de 2017 IRR Gas y

Rancho Dan no eran "partes" en el procedimiento administrativo, pues entonces éstos **no** tenían derecho a una "notificación adecuada" del permiso de construcción como **tampoco** les podía ser oponible el término de veinte (20) días para presentar una reconsideración de la determinación final de la OGPe. No podemos utilizar como punto de partida la fecha del 5 de enero de 2017 -momento en que IRR Gas advino en conocimiento de la concesión del permiso de construcción- para computar el término de veinte (20) días porque en esa fecha no hubo una notificación propiamente por parte de ningún foro administrativo ni judicial. Al igual que en *Montebello Dev. Corp.*, aplicar la doctrina de la "notificación constructiva" a los hechos del presente caso sería una burla a ese "eslabón de tanta envergadura" que supone el debido proceso de ley en los procedimientos adjudicativos administrativos.

Así pues, aunque los peticionarios en este caso no fueron ni podían ser "partes" formales en la concesión inicial del permiso de construcción, la División de reconsideración -al permitir primero la intervención- efectivamente tenía jurisdicción para resolver la solicitud de reconsideración presentada por IRR Gas y Rancho Dan.

**IV.**

Por todo lo cual, erró el Tribunal de Apelaciones al revocar la determinación de la División de reconsideración bajo el fundamento de falta de jurisdicción por parte de ese organismo administrativo. Por tal razón, lo procedente en derecho es reinstalar en su totalidad la determinación de la

División de reconsideración de la OGPe, por ésta haber actuado con jurisdicción al dejar sin efecto el permiso de construcción concedido a T & B.

Anabelle Rodríguez Rodríguez
Juez Asociada